UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

                    Plaintiff,

        v.

GEORGINA'S, LLC and,
ANTHONY'S LITTLE G'S, LLC,

                    Defendants.

CASE NO.  1:18-cv-00668-HYJ-SJB

Honorable Hala Y. Jarbou
Honorable Sally J. Berens

**Oral Argument Requested**

_____

PLAINTIFF'S RESPONSE TO DEFENDANT ANTHONY'S LITTLE G'S.
LLC'S MOTION FOR JUDGEMENT ON THE PLEADINGS

OVERVIEW

Defendant's Anthony's Little G's LLC's ("Little G's") Motion for Judgement on the Pleadings is based on two arguments: 1) that Little G's is not an employer under Title VII, and 2) that Little G's is Not a Successor to Georgina's LLC. Both arguments ignore entire paragraphs of the Amended Complaint and are dependent on disputing other plead facts as untrue. The second argument is not even properly before the Court at this stage. In deciding a motion for judgment on the pleadings, it is not the Court's task to determine whether Little G's is a successor, but to accept all facts as true and draw all reasonable inferences that can be taken from those facts in

1

favor of the Plaintiff, and determine whether Plaintiff has *plead* enough facts to plausibly *claim* successor liability. Successor liability is an equitable doctrine subject to no exact formula or elements for pleading. Because the Amended Complaint pleads sufficient facts to state a plausible claim for successor liability, Little G's Motion should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed a Complaint on June 14, 2018, alleging that Defendant Georgina's LLC ("Georgina's") sexually harassed and retaliated against a former female employee and other similarly situated female employees. ECF No. 1. On May 24, 2020, Georgina's principal place of business, the restaurant known as Georgina's Fusion Cuisine, located at 236 E. Front Street, Traverse City, Michigan, permanently closed. ECF No. 57-5. Days before closing that location, Georgina's owner, Anthony Craig, represented on Facebook (ECF No. 57-3) and to the media (ECF No. 57-4) that he would be **moving** Georgina's to a new location at 531 W. Front Street, Traverse City, Michigan.

An initial settlement conference was held on June 11, 2020. ECF No. 54. After Georgina's repeatedly represented that it was now defunct and had no assets, the Court issued an order allowing Plaintiff to conduct discovery on Georgina's financial condition and requiring the parties to appear at a second conference. ECF

No. 55. On June 19, 2020, Plaintiff sent Georgina's additional written discovery in accordance with the Court's order. ECF No. 73-2; ECF No. 73-4.

Anthony's Little G's, LLC, d/b/a Little G's Fusion Cuisine ("Little G's"), also owned by Anthony Craig, opened at 531 W. Front St., Traverse City, MI, on July 1, 2020. ECF No. 57-6, PageID.233. On July 17, 2020, Plaintiff promptly filed a Motion for Leave to Amend Complaint to Add Defendant Anthony's Little G's, LLC as a Defendant based on successor liability. ECF No. 57. A proposed Amended Complaint was attached as an Exhibit to the Motion. ECF No. 57-2. Also attached as Exhibits were the 5/13/20 Facebook post by Georgina's in which Georgina's stated it would be "moving" to 531 W. Front St. (ECF No. 57-3) and the 5/15/20 Traverse Ticker news article in which Anthony Craig was interviewed and indicated he was going to "relocate" Georgina's to 531 W. Front St., where the same Georgina's menu would be offered (ECF No. 57-4).

On July 29, 2020, the Court cancelled the second conference set for July 31, 2020. ECF No. 59. The Court granted Plaintiff's Motion to Amend Complaint on August 3, 2020. ECF No. 63. Importantly, the Court accepted and entered the proposed Amended Complaint that was attached as an Exhibit to Plaintiff's Motion for leave to Amend Complaint. ECF No. 64. The Amended Complaint asserts that Little G's has continuously had at least 15 employees at all relevant times. ECF No. 64, ¶ 4. It asserts that Georgina's posted on its Facebook page on May 13, 2020, that

3

it would be moving from 236 East Front Street to a new location at 531 West Front Street. *Id.* at ¶ 18. The Amended Complaint states that between 5/24/20 (the day Georgina's closed) and 6/29/20 (two days before Little G's opened at 531 West Front St.), Georgina's advised customers the new location would serve the same menu items, be staffed by the same employees, and would accept Georgina's gift cards. *Id.* at ¶ 20. It asserts that on June 29, 2020, Georgina's changed the name on its Facebook page to "Little G's" and Little G's continues to use the same page that Georgina's used from 2014 to 2020. *Id.* at ¶¶ 21-22. The Amended Complaint asserts that Little G's posted the day before it opened that it would accept Georgina's gift cards. *Id.* at ¶¶ 23-24. It states Little G's opened at 531 West Front Street on July 1, 2020. *Id.* at ¶¶ 24. It states Anthony Craig is the sole owner of both Defendants. *Id.* at ¶¶ 12(b), 25. It asserts that <u>each</u> of Little G's 32 menu items is taken directly from the Georgina's menu. *Id.* at ¶ 26. Finally, the Amended Complaint asserts that Little G's had notice of Plaintiff's claims against Georgina's prior to opening Little G's. *Id.* at ¶ 27.

On August 5, 2020, Georgina's provided untimely answers to the written discovery served on June 19, 2020. The responses contained an updated balance sheet indicating that Georgina's has no assets to satisfy a money judgement (ECF 73-3) and an interrogatory response stating that Georgina's gave over $80,000 in equipment to Little G's for no consideration (ECF 73-4). The updated Georgina's

balance sheet also lists $33,097.63 of debt that exists in the form of outstanding gift certificates. ECF No. 73-3. Little G's recently admitted it has assumed this debt for no consideration. ECF No. 70-1, PageID.388. On October 13, 2020, Plaintiff filed a Motion for Leave to Conduct Limited Discovery on the Issue of Successor Liability. ECF No. 75. On October 16, 2020, Little G's filed the pending Motion for Judgement on the Pleadings. ECF No. 78.

## LEGAL STANDARD

The legal standard applied to a motion to dismiss filed under Federal Rule of Civil Procedure 12(c) is the same as if the motion were filed under Rule 12(b)(6). The complaint must be construed in the light most favorable to the plaintiff and all the complaint's factual allegations must be accepted as true. *Lindsay v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007). All reasonable inferences must be drawn in favor of the plaintiff. *Handy-Clay v. City of Memphis*, 695 F. 3d 531, 538 (6th Cir. 2012). To survive a motion to dismiss, the complaint must contain enough facts to state a claim for relief that is plausible. *Tackett v. M & G Polymers, USA, LLC.*, 561 F.3d 476, 488 (6th Cir. 2009). While the allegations in the complaint are the primary focus in assessing a Rule 12(c) motion, "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint[ ] also may be taken into account." *Barany-Snyder v. Weiner,* 539 F. 3d 327, 332 (6th Cir. 2008) (*quoting Amini v. Oberlin Coll.* 259 F. 3d 493, 502 (6th Cir. 2001).

## ARGUMENT

1. Plaintiff Plead That Little G's Has 15 or More Employees, Even Though Such Pleading is Not Required In Order to Plead a Plausible Claim of Successor Liability.

Little G's asserts the Commission failed to plead that Little G's has employed fifteen or more employees for each working day in twenty or more calendar weeks in the current or preceding year. ECF No. 78-1, Page.ID 464. Little G's further asserts that ¶5 of the Amended Complaint is the only allegation that relates to its status as an employer. *Id.* These are false representations. Paragraph 4 of the Amended Complaint explicitly states hat Little G's has had 15 or more employees at all relevant times. ECF No. 64. For purposes of a Motion for Judgement on the Pleadings, this must be presumed to be true.

But even should it turn out that Little G's does not have 15 employees, such is not a pre-requisite to a finding of successor liability. *See Wallace v. DM Customs, Inc.*, No.8:05-cv-115-T-23 TBM, 2006 WL 2882715 at \*12-13 (M.D. Fla. Oct. 6, 2006) (denying Defendant's Motion for Summary Judgement based on argument that successor company did not have 15 employees, and holding that the pertinent inquiry was whether predecessor company had 15 employees, while noting that "imposition of successor liability is typically appropriate where the equities favor holding the successor corporation liable for the discriminatory acts of its predecessor."). Little G's attempts to undermine the analysis and reasoning of

*Wallace* by merely arguing that *Wallace* is unpublished and the only case cited by Plaintiff. *Wallace* is persuasive authority, however, and it is one more case than what Little G's cites to address whether a successor employer must have 15 or more employees. *See also* Claiborne Barksdale, *Successor Liability Under the National Labor Relations Act and Title VII*, 54. Tex. L. Rev. 707, 731 n.118 (1976) ("If the predecessor but not the successor has fifteen employees, [Title VII] will...cover the successor.") (case citations omitted). Little G's fails to identify a single case, and the Commission not aware of any case, which supports the contention that the *statutory* 15-employee requirement applies to a defendant who has been sued under the *equitable* theory of successor liability. Here, the Commission did not plead Little G's violated Title VII with illegal employment acts. Those allegations were only made against Georgina's. ECF No. 64, ¶¶ 12-16. The Commission plead Little G's is responsible for the illegal acts of Georgina's pursuant to a theory of successor liability. *Id.* at ¶¶ 18-28. Meaning, there are two separate questions: was Title VII violated and, if so, who is liable? Little G's Motion erroneously conflates the two. Successor liability is an inquiry under the second question, not the first. As such, determining successor liability does not involve a counting of employees.

The Sixth Circuit has consistently held that determining the applicability of successor liability is an *equitable* determination that will vary from case to case, stating for example: "We hold only that Title VII per se does not prohibit the

application of the successor doctrine, but rather mandates its application. Title VII was designed to eliminate discrimination in employment and the courts were given broad equitable powers to eradicate the present and future effects of past discrimination." *E.E.O.C. v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1091 (6th Cir. 1974). The "primary concern" of successor liability is to "provide the discriminate with full relief." *Id.* at 1092. In determining the applicability of successor liability, "the ultimate inquiry always remains whether the imposition of the particular legal obligation at issue would be equitable and in keeping with federal policy." *Cobb v. Contract Transp., Inc.*, 452 F.3d 543, 554 (6th Cir. 2006).

If courts were required to apply Title VII's rigid 15-employee requirement as a prerequisite to a finding of successor liability, any company formed after the discriminatory act took place, such as Little G's, could never be deemed a successor. This is because per the plain text of Section 701(b) of Title VII, as consistently interpreted by courts in the Sixth Circuit and around the country, the requirement of 15 or more employees "in the current or preceding calendar year" refers to *the year in which the unlawful employment action took place*. 42 U.S.C.§ 2000e(b); *Musser v. Mountain View Broadcasting, Inc.*, 578 F. Supp. 229, 230 (E.D. Tenn. Jan. 11,1984); *Komorowski v. Townline Mini-Mart*, 162 F.3d 962, 966 (7th Cir. 1998); *Dumas v. Town of Mount Vernon, Ala.,* 612 F.2d 974, 979 n. 4 (5th Cir. 1980)

8

(overruled on other grounds, *Green v. Grampre*, 388 Fed. Appx. 437, 438 (5ᵗʰ Cir. 2010)).

Thus, for successor-liability purposes, only Georgina's, not Little G's, must satisfy the 15-employee requirement. Little G's did not exist during the period in which Georgina's committed the alleged unlawful actions. Georgina's engaged in unlawful conduct between November of 2014 and February 7, 2016. ECF No. 64, ¶¶ 6, 12-13. Little G's did not exist at any time between November of 2014 and February of 2016. ECF No. 61-2. Thus, neither it nor any corporate entity formed after the relevant and applicable period – notwithstanding the size of the workforce – could ever be an "employer" as defined by Section 701(b).

Applying the 15-employee requirement to successor liability does not make sense and is inconsistent with the equitable nature of the doctrine as set forth in *MacMillan* and *Cobb*. Any employer wishing to avoid liability could do so by having the discriminating company assumed by a newly formed company that did not exist when the discriminatory activity occurred, or by having a new or different company with less than 15 employees assume the business of the discriminating company.[1]

---

[1] Also consider the converse: an employee who worked at a small company was subjected to discriminatory acts. Because the employer had fewer than 15 employees, the discrimination did not violate Title VII. But if the company was acquired by a large employer, Little G's argument would retroactively transform the discrimination into a cause of action for the employee—because the new employer is a covered entity under Title VII, the employee could sue the large employer and invoke Little G's theory of successor liability.

Such would not further Title VII's design of eliminating discrimination in employment.  In the present case, potential dismissal of Little G's based on such a view would be particularly egregious, where the case record indicates Anthony Craig intended Little G's to be a continuation of Georgina's and portrayed the business to the public as such.

### 2. Plaintiff Plead Sufficient Facts to State a Plausible Claim of Successor Liability.

The Sixth Circuit has identified 9 factors that may be relevant to determining whether a company should be deemed a successor: 1) whether the successor company had notice of the charge, 2) the ability of the predecessor to provide relief, 3) whether there has been a substantial continuity of business operations, 4) whether the new employer uses the same building, 5) whether it uses the same or substantially the same work force, 6) whether it uses the same or substantially similar supervisory personnel, 7) whether the same jobs exist under the same working conditions, 8) whether it uses the same machinery, equipment and methods of production and 9) whether it produces the same product. *MacMillan Bloedell Containers, Inc.*, 503 F.2d at 1094.

But while these factors are relevant, they are not required elements. "The nature and extent of liability is subject to no formula, but must be determined on the facts and circumstances of each case." *Id.* at 1092. "All nine factors will not be applicable to each case." *Cobb v. Contract Transp., Inc.*, 452 F. 3d 543, 554 (6th Cir. 2006)

(emphasis added). The ultimate inquiry remains whether the imposition of liability would be equitable and in keeping with federal policy. *Id.* "Whether successor liability is equitable in a particular case requires courts to balance 1) the interests of the defendant-employer, 2) the interests of the plaintiff-employee, and 3) the goals of federal policy, in light of the particular facts of a case and the particular legal obligation at issue." *Id.* "Title VII was designed to eliminate discrimination in employment and the courts were given broad equitable powers to eradicate the present and future effects of past discrimination." *MacMillan*, 503 F.2d at 1091. "Failure to hold a successor employer liable for the discriminatory practices of its predecessor could emasculate the relief provisions of Title VII by leaving the discriminatee without a remedy or with an incomplete remedy." *Id.* In the case where the predecessor company no longer had any assets, monetary relief would be precluded. Such a result could encourage evasion in the guise of corporate transfers of ownership." *Id.* at 1091-92.

At page 8 of its brief, Little G's begins a secondary argument for dismissal that evidences confusion as to what its own argument is and the type of motion it has filed. The argument is titled, "Anthony's Little G's is not a successor in interest to Georgina's, LLC." ECF 78-1, PageID.467. Extensive parts of the subsection are then devoted to arguing that certain facts as plead in the Amended Complaint are not

true.[2] The Court's present task is not to determine if Little G's is a successor (such would be an issue for the trier of fact). Nor should the court make determinations about whether the plead facts are true in deciding the instant Motion (such would also be an issue for trial). Instead, the Court must determine if the plead facts, assuming all of them to be true[3], and taking all reasonable inferences that can be drawn from those facts in favor of the Plaintiff[4], state a plausible claim for successor liability[5]. In making this determination, the Court may also look at items appearing in the record of the case.[6]

Little G's wrongly refers to *MacMillan's* suggested factors as "elements" and goes so far as to assert that because the Amended Complaint does not specifically allege that Georgina's is unable to provide relief (*MacMillan* factor #2), such must automatically result in dismissal. This "check all the boxes" approach is explicitly

---

[2] ECF 78-1, PageID.469-70 (paragraph beginning with "And these facts plead are not true", which argues the allegations of ¶22 of the Amended Complaint are not true. Little G's seems to argue all factual assertions made by Georgina's or Little G's on the Georgina's / Little G's Facebook page were actually made by Anthony Craig, not Georgina's or Little G's as plead. While it is inappropriate to argue facts in this motion, such would be a distinction without meaning. It is undisputed Craig made the posts and is the sole owner of both Defendants). Also see ECF 78-1, PageID.470-71, which argues at length that the menu allegations in ¶ 26 of the Amended Complaint are not true.

[3] *Lindsay v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007).

[4] *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012).

[5] *Tackett v. M & G Polymers, LLC*, 561 F.3d 478, 488 (6th Cir. 2009).

[6] *Barany-Snyder v. Weiner,* 539 F.3d 327, 332 (6th Cir. 2008).

contradicted by *MacMillan* and *Cobb*. 503 F.2d at 1092; 452 F.3d at 554. "[A]ll nine factors will not be applicable to each case." *Cobb*, 452 F.3d at 554. Little G's also fails to mention key plead facts and does not attempt to put those facts into context or address their logical inference – in particular, that Georgina's publicly posted that it was "moving"(ECF No. 64, ¶18) and that Georgina's announced between the date it closed and two days before Little G's opened that it would be serving the same dishes and have the same employees (*Id.* at ¶20).

Accepting paragraphs 18 through 27 of the Amended Complaint as true, and making all reasonable inferences that can be drawn from them in favor of the Plaintiff, the Amended Complaint logically and plausibly conveys that a plan was made and executed to continue Georgina's business at Little G's, in a way that meets many of the *MacMillan factors*. Specifically:

- Georgina's publicly announced a plan to "move" the business to 531 W. Front Street (*id.* at ¶18) and publicly announced to its customers that it would be serving the same menu items and employ the same staff (*id.* at ¶20). The Facebook page that was used by Georgina's from 2014 to 2020 was assumed by and continues to be used by Little G's (*id.* at ¶¶ 21-22). Little G's publicly announced it would accept Georgina's gift certificates (*id.* at ¶23). Little G's opened at the same location to which Georgina's announced it would move, with a menu consisting entirely of Georgina's

menu items (*id.* at ¶¶ 24, 26), and both business are solely owned by the
same person (*id.* at ¶¶ 12(b), 25). Based on these facts as plead –
particularly the continued use of the Georgina's menu and Facebook page,
and the continued acceptance of Georgina's debt (gift cards) – Plaintiff has
plausibly claimed a substantial continuation of business operations (i.e.,
Georgina's carried out its plan to move) and sufficiently plead *MacMillan*
factor # 3.

- Georgina's publicly announced on its Facebook page it would employ the
  same staff *(id.* at ¶20). Georgina's changed the name on its Facebook page
  to Little G's (*id.* at ¶21), and Little G's continues to use the same page *(id.*
  at ¶22). Based on these facts as plead, Plaintiff has plausibly claimed that
  Little G's uses substantially the same work force and sufficiently plead
  *McMillan* factor #5.

- Where "each" of the 32 items on Little G's menu is taken directly from
  the Georgina's menu (¶26), it is reasonable to infer Little G's is producing
  the same product. Plaintiff has sufficiently plead *MacMillan* factor # 9.

- Little G's had notice of Plaintiff's claims against Georgina's prior to opening at 531 W. Front St. (¶27). *MacMillan* factor # 1 is sufficiently plead.[7]

Collectively, these facts, as plead, are sufficient to state a plausible claim for successor liability and for relief. Where a successor restaurant has notice of Plaintiff's claims, specifically articulates a plan to continue business operations at a new address, serving the same product made and served by the same people, and then executes that plan and opens a "new" business at the previously announced address serving *only* the predecessor's food while accepting the predecessor's gift certificates, all while assuming and continuing to use the predecessor's Facebook page, it is at least "plausible" that balancing the equities will result in the new restaurant being deemed a successor. *Cobb, 452* F. 3d at *554*.

### 3. Other Items On The Record Render the Claim of Successor Liability Plausible.

Although the facts plead at paragraphs 18 through 27 of the Amended Complaint are already sufficient to state a plausible claim for successor liability, additional items which further the plausibility of such claim have appeared in the record of the case since the Amended Complaint was filed. Georgina's produced a Balance Sheet dated June 30, 2020 to support its claim that it does not have assets to cover any

---

[7] Little G's acknowledges Little G's had notice of the EEOC charge (*MacMillan* factor # 1). ECF 78-1, PageID.468.

money judgement Plaintiff achieves (ECF No. 73-3).[8] This may support the existence of the second *MacMillan* factor. Also, in response to an interrogatory, Georgina's states it gave Little G's $80,000 of equipment for free (ECF No. 73-4), which may support the eighth *MacMillan* factor. Taking into account these recent additions to the record, and construing the Amended Complaint in the light most favorable to the Plaintiff, sufficient factual matter has been plead to state a claim for relief based on successor liability.

Furthermore, Plaintiff's interest in a finding of successor liability is strong and such a finding would further the goals of federal policy. The Commission was created by Congress and given the task of preventing and remedying employment discrimination, including sexual harassment. 42 U.S.C. § 2000e-5(a). The sexual harassment detailed in the Amended Complaint is severe and affected Jessica Werthen and multiple other women. ECF No. 64, ¶¶ 12-14. It is exactly the type of conduct Plaintiff was tasked with eliminating. 29 C.F.R. § 1604.11. Plaintiff's interest is thus strong. So too is Werthen's. She was fired ten minutes after submitting a written harassment complaint. *Id.* The only means she has of being made whole is

---

[8] The 6/30/20 balance sheet was not provided until 8/7/20 – after the Amended Complaint was filed. It indicates Georgina's has insufficient assets to satisfy any judgement. Plaintiff did not plead Georgina's had insufficient assets only because it did not know for certain if Georgina's had any assets (this discovery was outstanding), and because the Plaintiff seeks punitive and compensatory damages, the amounts of which are unknown.

relief from Little G's. A finding of successor liability would also further the policy goals of Title VII by discouraging evasion of liability, thereby more effectively eliminating discrimination.

Conversely, the record reveals that a ruling that Plaintiff did not sufficiently plead a claim of successor liability would reward just the type of guise to avoid liability warned of in *MacMillan*. While the Commission has not had an opportunity to complete relevant discovery as it pertains to Little G's, the record indicates that Georgina's is deliberately attempting to use corporate formalities and the opening of Little G's to avoid liability. There is evidence that Georgina's intent was to move and continue the business at Little G's location. ECF No. 57-2; ECF No. 57-4. This intent was publicly articulated by the sole owner of both Defendants. *Id.*[9] Georgina's admitted to the Court that the only reason its owner later attempted to retract these statements was because his lawyer told him to.[10] Even after the deletion of the 5/13/20 Facebook post, Georgina's regularly gave its customers the impression it was

_____

[9] Little G's attempts to distance itself from what its sole owner said the business was going to be (a continuation of Georgina's) are both confusing and based in part on false factual assertions. Little G's appears to argue that although the 5/13/20 "we are on the move" Facebook post was made on the Georgina's Facebook page, such was not a representation made by Georgina's, but rather by Anthony Craig, as he is the true owner of the Georgina's Facebook page (which is now the Little G's page). As Craig is the sole owner of Georgina's, such would be a distinction without much meaning. Moreover, Craig maintains his own separate page. Ex. 1.

[10] See ECF No. 61, PageID.315. After acknowledging Craig personally operates the page on which the post appears, Georgina's acknowledged the post was deleted after a week, on the advice of counsel.

"moving" and/or would continue operating out of a "new space." It made a point of not using the phrase "new restaurant."[11]

When Little G's opened on 7/1/16, it did so with the menu found at ECF No. 57-11. Every one of the 32 food items available on the menu was taken directly from the Georgina's menu, which can be found at ECF No. 57-10. After the Amended Complaint was filed, which cited the identical menu as a basis for successor liability, Little G's curiously and suddenly "changed" the menu by adding chips and salsa as an appetizer and 6 new entrees. Little G's then attached the freshly modified menu to its Verified Answer (ECF No. 70-3) and also argued the menu is "different" because different types of meat are used in the Asian and Latin dishes (ECF No. 70-1, ¶¶ 13-15), because a different heat source is used to cook pork (*Id.* at ¶16) and because the calamari is prepared differently and served with chips (*Id.* at ¶18). None of these minor "changes" appeared anywhere on the original Little G's menu printed

---

[11] See ECF No. 57-6. On Facebook, Georgina's and/or Little G's used the phrase "new restaurant" only once between its closing on 5/24/20 and the opening of Little G's on 7/1/20. Instead during that time frame it repeatedly tried to create the impression that Georgina's would be continuing, by referring to Little G's as a "new space", "new location", "move", "new chapter", etc. To S. Hoover (PageID.248): "We've been planning this move for the last month...new chapter myself and my staff!" To K. Steele (PageID.248): "We will be keeping lots of our dishes for the new space." To H. Woodruff (PageID.247): "Look forward to having you guys enjoy the new space." To J. Carsten (PageID.245): "New space has lots to offer and we will make sure to have lots of Georgina's favorites." To D. Deemer (PageID.249): "hope to see you at the new space buddy!" To J. Valice (PageID.249): "we will honor Georgina's gift cards at new location!" To A. Gowell (PageID.244): "hope that the new space will also be 'your place'!!"

and used before the Amended Complaint was filed. ECF No. 57-11. Not only were the food items the same, the description/ingredients listed for each were identical to the Georgina's menu. ECF No. 57-10; ECF No. 57-11.

Moreover, on its "post Amended Complaint" menu, Little G's continues to hide these supposed differences from customers; the only one that appears anywhere is that calamari is now served with chips. ECF No. 70-3. To this day, Little G's also continues to represent to the public on Facebook that it is Georgina's. Over 400 customer reviews of Georgina's made between 2014 and May of 2020 have been retitled as reviews made of Little G's. ECF No. 57-8.[12] Any member of the public visiting the "Reviews" tab will form the belief that Little G's is Georgina's, and has existed continuously since 2014, maintaining a 4.8/5 star rating after being reviewed by customers over 400 times in six years.

Granting the instant Motion would also reward Little G's for knowingly making a false representation to the Court. Counsel for Georgina's repeatedly represented to Plaintiff's counsel before the settlement conference on June 11, 2020

---

[12] By changing the name of the Georgina's Facebook page to Little G's, Little G's renamed 400+ restaurant reviews of Georgina's from 2014 to 5/24/20 as Little G's reviews. ECF No. 57-8. This would not be the case if Little G's formed a new page or changed the Bushi page or Anthony Craig page to a Little G's page. Both Anthony Craig and Bushi maintain separate Facebook pages. The Georgina's page was changed to "Little G's", not the Craig or Bushi page. See ECF No. 82-3 & Ex. 1. Anthony Craig continues to use his Facebook page to create the impression that Georgina's is still open for business; the page is currently named "Anthony Craig (Georgina's)." *Id.*

that Georgina's had no assets. At the June 11th conference, Georgina's counsel (with Anthony Craig present) openly stated that "as an officer of the Court, I can represent Georgina's has no assets." This statement was documented in an e-mail exchange between Plaintiff's counsel and Georgina's counsel on June 19, 2020. ECF No. 73-2. Plaintiff's counsel expressed surprise Georgina's counsel made such a representation, as Anthony Craig has sometimes not been honest with Georgina's counsel or his previous attorney. *Id.* Georgina's counsel responded, "Touché." *Id.*[13] At the settlement conference, presumably because Georgina's kept representing it had no assets, the Court permitted limited discovery on Georgina's finances. Said discovery was served on Georgina's on June 19, 2020. ECF No. 73-2; ECF No. 73-4. When Georgina's counsel provided responses on 8/5/20, they included a balance sheet confirming what he had represented to the Court – that Georgina's has no assets to satisfy a judgement. ECF No. 73-3.[14]

Six weeks later, Craig hired a new attorney to represent Little G's and submit a sworn, verified answer and an affidavit saying the exact opposite – that Georgina's

---

[13] Touché is defined as acknowledging the success or appropriateness of an argument or accusation. See https://www.merriam-webster.com/dictionary/touch%C3%A9.

[14] While the Balance Sheet shows $51,000+ in fixed assets/equipment and over $111,000 in cash, it shows over $440,000 in debt to parties that would be greater or equal in priority to Plaintiff. Per the balance sheet, Georgina's would not be able to satisfy any judgement, be it $10,000 or $500,000. ECF No. 73-3.

does have sufficient assets. ECF No. 70, PageID.381; ECF No. 70-1. Little G's Rule 12(c) Motion leans heavily on this argument – which it must know to be false.

### 4. Little G's Arguments That Plaintiff Should Have Asserted a Successor Liability Claim Sooner and Is Pursuing Craig Personally Do Not Make Sense and Have No Merit.

Little G's makes repeated claims that Plaintiff somehow should have plead successor liability earlier. Such argument was previously raised by Georgina's and rejected by the Court via the Order granting Plaintiff's Motion for Leave to Amend Complaint to Add Anthony's Little G's, LLC, as a Defendant. ECF No. 61; ECF No. 63. Now that successor liability has been plead and Little G's is a defendant, its submission of this argument is moot.

Nonetheless, to illustrate the folly of this argument, and why Plaintiff did not have grounds to assert a claim of successor liability until the middle of 2020, a review of the factual timeline pertaining to the opening of Little G's is warranted.

The Underground Sushi Factory, LLC was organized on 9/8/17. ECF No. 61-2. It existed on paper only until it opened as "Bushi," a restaurant serving hamburgers and sushi, on May 19, 2019. ECF No. 57-6, PageID.252-3; ECF No. 82-2. Not a single item on the Bushi menu appears on the Georgina's menu. It was a new and entirely different menu. ECF No. 82-5; ECF No. 57-10. Bushi was only open from May to October of 2019 before going out of business. ECF No. 82-3; ECF No. 82-4; ECF No. 57-4. From October of 2019 to May of 2020 (while

21

Georgina's was still open), Bushi existed on paper only and its former location at 531 W. Front Street had a "for lease" sign in the window. ECF No. 57-4; ECF No. 82-4. On May 13, 2020, Georgina's posted it would be moving to 531 W. Front Street. ECF No. 57-3. Two days later, Anthony Craig gave an interview in which he again said he was moving Georgina's to 531 W. Front Street, "the vacant building where he previously ran Bushi." ECF No. 57-4.[15] Georgina's closed on May 24, 2020. ECF No. 57-5. On May 26, 2020, The Underground Sushi Factory, LLC formally changed its name to Anthony's Little G's, LLC (i.e., "Little G's", or "Little Georgina's"). ECF No. 61-2.

This chronology draws Little G's present argument into its proper focus. Little G's is suggesting that Plaintiff should have asserted The Underground Sushi Factory was a successor to Georgina's either: 1) in 2018 when Georgina's was still open and The Underground Sushi Factory existed only on paper; 2) in mid-2019 when Georgina's was still open and The Underground Sushi Factory was open as "Bushi," serving a completely different menu than Georgina's; or 3) between October of 2019 and May of 2020 when Georgina's was still open, Bushi was closed, and Underground Sushi was essentially a vacant building with a "For Lease" sign in the window. None of these suggestions are viable or make sense. The Underground

---

[15] Notably, Craig did not tell the Traverse Ticker his plan was to "change the menu at that location from sushi and hamburgers to Asian and Latin fusion", the story now presented by Little G's (ECF 78-1, Page ID 462).

Sushi Factory would have met none of the *MacMillan* factors while Georgina's was still open and Underground Sushi either had no place of business, or only sold burgers and sushi. Little G's became a successor when Craig announced a specific plan to move Georgina's from 236 E. Front Street to 531 W. Front Street, closed the 236 E. Front Street location, and executed his announced plan. Such occurred between May and July of 2020.

Little G's also argues Plaintiff is attempting to pursue Craig personally. Plaintiff is not. This argument is invented out of thin air. Little G's is unable to cite a single pleading that makes such an assertion. If Plaintiff were attempting to go after Craig personally, his name would appear as a Defendant and some type of piercing theory would have been plead. Craig was not sued. Little G's was sued.

## CONCLUSION

For the reasons presented above, Plaintiff requests that this Honorable Court deny Little G's Motion for Judgement on the Pleadings.

Respectfully Submitted,

/s/ Miles Uhlar
MILES UHLAR (P65008)
Attorney for Plaintiff
Detroit Field Office
477 Michigan Avenue, Rm. 865
Detroit, Michigan 48226
(313) 226-4620
miles.uhlar@eeoc.gov

November 13, 2020

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2020, I electronically filed the foregoing *Plaintiff's Response to Motion to Defendant Anthony's Little G's Motion for Judgement on the Pleadings* with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record *via* the Court's e-filing system.


<u>/s/ Miles Uhlar</u>
MILES UHLAR (P65008)
Attorney for Plaintiff
Detroit Field Office
Patrick v. McNamara
477 Michigan Avenue, Room 865
Detroit, Michigan 48226
(313) 226-4620
miles.uhlar@eeoc.gov